IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HALLIBURTON COMPANY BENEFITS § | |
| COMMITTEE, in it's official capacity, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-04-1848 |
| § | |
| MEMORIAL HERMAN HOSPITAL § | |
| SYSTEM, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

Plaintiff, Halliburton Company Benefits Committee (the "Committee"), an administrator of the Kellog Brown & Root ("KBR") Welfare Benefits Plan (the "Plan"), filed a declaratory judgment complaint against Memorial Hermann Hospital System after receiving a demand for additional payment for medical services provided to a Plan participant. The Committee sought a declaration that it had paid all the money it owed for the medical services Memorial Hermann had provided and that the prompt payment provisions of the Texas Insurance Code do not apply to self-funded employee benefits plans, such as the KBR Plan. In the complaint, the Committee alleged jurisdiction under ERISA, 29 U.S.C. §§ 1001-1461, based on complete preemption. Memorial Hermann moved to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that ERISA preemption does not apply. Alternatively, Memorial Hermann moved for leave to assert a counterclaim against the Committee and a third-party action against Blue Cross Blue Shield

of Texas ("Blue Cross") – the third-party claims administrator of the KBR Plan – for breach of the managed care contract between Blue Cross and Memorial Hermann, for violation of the Texas prompt pay statute, for violations of the Texas Insurance Code, Article 21.21, §§ 4 and 16 and the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm. Code § 17.46, and for state common law claims of misrepresentation and negligence.

The issue is ERISA preemption.

## I.     Background

### A.     The Parties

John Marzell Walters, a KBR employee, participated in the KBR Welfare Benefits Plan, a self-funded employee welfare benefits plan. The Halliburton Company Benefits Committee was the Plan Administrator of the KBR Welfare Benefits Plan. KBR and Blue Cross entered into a contract under which Blue Cross served as the third-party claims administrator for the Plan. Blue Cross in turn had a managed care contract with Memorial Hermann. Under the managed care contract, Memorial Hermann agreed generally to accept specified (discounted) amounts for particular services.

In May and June 2003, Walters, a KBR employee, received treatment at a Memorial Hermann hospital. As is customary, Walters assigned his right to receive benefits under the KBR Plan to Memorial Hermann, which agreed to look to the Plan, not Walters, for payment. In June 2003, Memorial Hermann billed Blue Cross as the third-party Plan administrator $137,191.47 for the medical services provided Walters. Blue Cross paid $88,409.41 in November 2003. In the complaint, the Committee asserts that it refused to pay $49,538.81

of the amount Memorial Hermann invoiced because it "included charges for specific services that were in excess of the charges allowed under the contract between Hermann and Blue Cross, and also included at least one charge that was not covered at all under the terms of the KBR Medical Program." (Docket Entry No. 1, 4). In the response to the motion to dismiss, the Committee acknowledges that "many" of the listed services on the Memorial Hermann invoice were "covered" under the contract between Blue Cross and Memorial Hermann. The Committee identified only one of the invoiced charges as "not covered," but for this purpose, defined "covered" in terms of the KBR Plan. That charge was for "Education/Training." (Docket Entry No. 12, 2). In a hearing, the Committee acknowledged that this item – consisting of a $110 charge – was the only charge that was rejected because it was outside the KBR Plan. The remaining amount – $49,428.81 – was rejected based on the terms of the managed care contract between Blue Cross and Memorial Hermann, not the terms of the KBR Plan.

After Memorial Hermann sent a demand letter seeking the unpaid invoiced amount, statutory penalties, and attorneys' fees, the Committee filed this suit. The Committee seeks a declaratory judgment that "Memorial Hermann is not entitled to additional benefits under the terms of the KBR Medical Program or the contract between Memorial Hermann and Blue Cross"; and "the prompt payment provisions of the Texas Insurance Code . . . do not apply to KBR as a self-funded plan provider" or "are preempted by ERISA."

In the motion to dismiss, Memorial Hermann argued that ERISA preemption does not apply and that federal jurisdiction is not present. Citing to the demand letter attached to the

declaratory judgment complaint, Memorial Hermann argued that its claims for breach of its managed care contract with Blue Cross were not preempted. Memorial Hermann agreed that if it sought to recover as an assignee of Walters's claims under the Plan, preemption would result, but because it was "seeking the amounts contractually promised and owed by Plaintiff and Blue Cross under independent contracts, separate and apart from any alleged 'ERISA plan,'" no preemption resulted. (Docket Entry No. 4, 6). Memorial Hermann asserted that it was bringing its claims for failure to pay the amounts agreed to under the Blue Cross contract, and for failure to pay timely, "on its own behalf, as a creditor, rather than on the behalf of the plan participant, Patient Walters." (*Id.*).

## II.     ERISA Preemption

District courts have federal question jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." See 28 U.S.C. § 1331. Although federal jurisdiction is generally determined by the allegations of the complaint, "[t]here is an exception to the well-pleaded complaint rule, though, if Congress 'so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir.2003) (en banc) (quoting *Taylor*, 481 U.S. 58, 63-64, 107 S. Ct. 1542 (1987)), *cert. denied*, 540 U.S. 1104, 124 S. Ct. 1044 (2004).

In this case, both because the Committee filed a declaratory judgment action preemptively raising the issues that could have been litigated in a suit filed by the declaratory judgment defendant, and because of the nature of the preemption alleged to exist, the issue

is the exception to the well-pleaded complaint rule: whether ERISA completely preempts any state-law causes of action that Memorial Hermann could raise. Congress may so completely preempt a particular field that any complaint raising claims in that field is necessarily federal in nature. *Taylor*, 481 U.S. at 63-64.[1] Section 502(a) of ERISA, 29 U.S.C. § 1132(a), has such an effect:

> [T]he ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. Hence, causes of action within the scope of the civil enforcement provisions of § 502(a) are removable to federal court.

*Aetna Health Inc. v. Davila*, 124 S. Ct. 2488, 2496 (2004) (citations omitted) (holding that state-law claims brought by beneficiaries and participants in ERISA-regulated employee benefit plans for failure to exercise ordinary care in handling coverage for medical treatments were completely preempted). In *Davila*, the Supreme Court stated the test for complete preemption of claims under section 502 of ERISA:

> [I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal)

---

[1] Another type of preemption, known as "conflict" or "ordinary" preemption, "arises when a federal law conflicts with state law, thus providing a federal defense to a state law claim, but does not completely preempt the field of state law so as to transform a state law claim into a federal claim." *Arana*, 338 F.3d at 439. Under ERISA's conflict preemption provision, § 514(a), "any and all State laws [are displaced or superceded] insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a); *see also Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1217 (5th Cir.), *cert. denied*, 506 U.S. 820, 113 S. Ct. 68 (1992). State law "relates to" an ERISA plan "if it has a connection with or reference to" an employee benefit plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).

> independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Id*. at 2496 (citation omitted).

Under the *Davila* analysis, federal jurisdiction applies to this case only if: (1) Memorial Hermann could have brought any of its state-law claims under section 502, and (2) no other independent legal duty supports the claims. *Id.*; *see also Pasacack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) (holding that a hospital's claim for breach of a subscriber agreement between the hospital and the ERISA plan, based on the plan's calculation of payments for services rendered to beneficiary, was not completely preempted by § 502); *Children's Hosp. Corp. v. Kindercare Learning Ctr., Inc*., 360 F. Supp. 2d 202 (D. Mass. 2005) (applying *Davila* and holding that hospital's claim for breach of hospital services agreement was not preempted).

### III. Analysis

#### A. The Nature of the Claim: Derivative or Independent

The first question under the *Davila* complete preemption test is whether Memorial Hermann is asserting a claim for a denial of coverage for medical care that could only have been asserted under the terms of an ERISA-regulated employee benefit plan, or whether it could have brought the claim "at some point in time" under ERISA § 502(a)(1)(B)." *Davila*, 124 S. Ct. at 2496. A hospital has standing to sue under section 502(a) as an assignee of a

participant or beneficiary in order to claim plan benefits. *See Hermann Hosp. v. MEBA Med. & Ben. Plan*, 845 F.2d 1286, 1289 (5th Cir. 1999); *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 n.7 (3d Cir. 2004); *City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 228-29 (1st Cir. 1998). ERISA completely preempts state-law causes of action for plan benefits brought by a provider as an assignee. Memorial Hermann had an assignment of benefits from Walters and could sue under section 502 of ERISA as an assignee. Eschewing its right to bring its claim under section 502 as an assignee of benefits, however, Memorial Hermann states that it only presses claims for violations of legal duties that are independent of ERISA. (*See* Docket Entry No. 15 ¶¶ 4-5, 15).

Memorial Hermann had the right to assert independent causes of action regardless of the assignment. Although a hospital's claim cannot be completely preempted if it did not receive an assignment that would give it standing to sue under ERISA, the assignment itself does not result in complete preemption of the hospital's claim.[2] *See Baylor Univ. Med. Ctr. v. Epoch Group, L.C.*, 340 F. Supp. 2d 749, 760 n.9 (N.D. Tex. 2004) ("That [plaintiff] could have sued as an assignee is not dispositive. . . . Given [plaintiff's] independent right of action

---

[2] *See Peninsula Reg'l Med. Ctr. v. Mid Atlantic Med. Serv*s., LLC., 327 F. Supp. 2d 572, 575, 576 (D.Md. 2004) ("The 'threshold question' presented by [the *Davila*] test is whether the plaintiff has standing to sue under ERISA's civil enforcement provision. . . . Without the specific assignment of rights by a participant or beneficiary, however, this Court finds no authority to support the proposition that a third-party provider has standing to sue on its own behalf under ERISA."); *Johns Hopkins Hosp., Carefirst of Md., Inc.*, 327 F. Supp. 2d 577, 581 (D. Md. 2004) (citing *Davila* test for proposition that "[t]he plaintiff's standing to sue under [§ 502(a)(1)(B) ] is . . . an essential requirement in determining whether claims are preempted"); *Tenet Healthsystem Hosps., Inc. v. Crosby Tugs, Inc.*, 2005 WL 1038072 *3 (E.D. La. Apr.27, 2005) ("Without an assignment of benefits from a 'participant' or 'beneficiary' of an ERISA plan, . . . a third-party health care provider[ ] does not have standing to assert an enforcement claims under [state law].").

as a creditor, the court will not recharacterize [it] as an assignee."); *Tenet Healthsystem Hosps., Inc. v. Crosby Tugs, Inc.*, 2005 WL 1038072 *3 n.3 (E.D. La. Apr.27, 2005) ("That [plaintiff] may, in fact, have an assignment, is not itself dispositive, if the rights at issue are those provided by a third-party agreement, rather than an ERISA plan."); *Children's Hosp.*, 360 F. Supp. 2d at 206 ("As a master of its own complaint, [plaintiff] had the right to assert independent causes of action regardless of the assignment."); *cf. Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289 n.13 (5th Cir. 1988) (stating that discouraging health care providers from becoming assignees would "undermine Congress' goal of enhancing employees' health and welfare benefit coverage").

Complete preemption under section 502(a) requires both standing and the lack of an independent legal duty supporting a state-law claim. *See Davila*, 124 S. Ct. at 2496. A legal duty is not independent if it "derives entirely from the particular rights and obligations established by [ERISA] benefit plans." *Id.*; *see generally Mem'l Hermann Hosp. Sys. v. Great-West Life & Annuity Ins. Co.*, 2005 WL 1562417 (S.D. Tex. June 30, 2005). Each of the claims Memorial Hermann asserts is examined under this test.

### B. The Breach of Contract and Related Texas Insurance Code Claims

In its demand letter to the Committee, and in its proposed counterclaim and third-party claim, Memorial Hermann contends that Blue Cross breached the managed care contract by failing to pay claims within the time, and in the amounts, set out in that contract. The Committee acknowledges that it refused to pay only one of the charges Memorial Hermann

invoiced on the basis that the underlying service was not covered by the ERISA Plan.[3] Memorial Herman has repeatedly stated that it does not seek to recover a charge that entirely depends on the ERISA benefit plan terms. (Docket Entry No. 15 ¶¶ 4-5, 15). All other amounts at issue were refused on the basis of the independent contract between Memorial Hermann and Blue Cross. At bottom, Memorial Hermann alleges rights to compensation as a third-party health care provider at rates and under terms set out in the managed care contract, not the terms of the ERISA Plan covering Walters. A participant or beneficiary of the ERISA Plan, such as Walters, could not assert the claims Memorial Hermann seeks to pursue. Memorial Hermann could not "have brought its claim under ERISA § 502(a)(1)(B)." *Davila*, 124 S. Ct. at 2496.

This court concludes that Memorial Hermann's rights do not derive entirely from the particular rights and obligations established by the ERISA benefit plan. The breach of contract claim is not completely preempted under a *Davila* analysis. *See Baylor v. Epoch*, 340 F. Supp. 2d at 759 (holding that a state contract claim brought by a healthcare provider under intertwined contracts, including a subscriber services agreement, was not preempted); *Baylor Univ. Med. Ctr. v. Epoch Group, L.C.*, 2004 WL 2434290, at *2 (N.D. Tex. Oct. 29, 2004) (reconsideration in light of *Davila*); *Tenet Healthsystem*, 2005 WL 1038072, at *3 (rejecting defendants' contention that plaintiff's claim for breach of hospital services agreement was completely preempted under *Davila*); *Children's Hosp.*, 360 F. Supp. 2d at

---

[3] That sole charge was for $110. (*See* Docket Entry No. 21, Tr. 14-15).

206 (same).

In the demand letter and in the proposed counterclaim and third-party claim, Memorial Hermann asserts violations of Articles 3.70, 20A.18B, and 21.55 of the Texas Insurance Code, alleging that Blue Cross and the Committee refused to pay the hospital's claims in accordance with the managed care agreement.[4]  Articles 20A.18B, 3.70, and 21.55 of the Texas Insurance Code require insurers, including health maintenance organizations and preferred provider organizations, promptly to pay the claims of physicians and other health care providers. *See Baylor Univ. Med. Ctr. v. Arkansas Blue Cross Blue Shield*, 331 F. Supp. 2d 502, 511 (N.D. Tex. 2004). Article 20A.18B(c), a now-repealed part of the Texas Health Maintenance Organization Act, required an HMO to "pay the total amount of the claim in accordance with the contract between the physician or provider and the [HMO]" within forty-five days of receiving a clean claim from a physician or provider.[5]  Article 3.70 applies

---

[4] *See* Tex. Ins. Code Ann. Art. 20A.18B, repealed by Acts 2001, 77th Leg., ch. 1419, § 31(b)(13)-(15) (effective June 1, 2003); Tex. Ins. Code Ann. Art. 21.55, repealed by Acts 2003, 78th Leg., ch. 1274, § 26(a)(1) (effective April 1, 2005); Tex.  Ins. Code Ann. Art. 3.70, repealed by Acts 2003, 78th Leg., ch. 1274, § 26(a)(2), (3) (effective April 1, 2005).

[5] *Baylor v. Arkansas*, 331 F. Supp. 2d at 511 (quoting Tex. Ins. Code Ann. Art. 20A.18B(c)(1), replaced by Tex. Ins. Code Ann. tit. 6, §§ 843.338--843.3385). Article 20A.18B further provides:

> A health maintenance organization that violates Subsection (c) . .. of this section is liable to a physician or provider for the full amount of billed charges submitted on the claim or the amount payable under the contracted penalty rate, less any amount previously paid or any charge for a service that is not covered by the health care plan.

Tex. Ins. Code Ann. Art. 20A.18B(f), replaced by Tex. Ins. Code Ann. tit. 6, § 843.342 (Vernon Pamphlet 2004-2005).

to health insurance policies that offer different benefits from the basic level of coverage for the use of preferred providers. *Id.* (citing Tex. Ins. Code Ann. art. 3.70-3C, § 2). The prompt payment provisions in Article 3.70-3C, § 3A, which the Texas Legislature repealed in 2005, required an insurer "[not] later than the 45th day after the date that [it] receives a clean claim from a provider to "make a determination of whether the claim is payable."[6] Article 21.55, also repealed, provided for certain damages for breach of that duty. *See Protective Life Ins. Co. v. Russell*, 119 S.W.3d 274, 284-85 (Tex.App.--Tyler 2003, pet. denied).

Memorial Hermann's statutory claims for violating Texas's prompt pay statutes do not enforce rights protected by ERISA's civil enforcement provision. *See Davila*, 124 S. Ct. at 2496; *see also Foley v. Southwest Tex. HMO, Inc.*, 226 F. Supp. 2d 886, 901 (E.D. Tex. 2002) (concluding that ERISA did not preempt the plaintiff's claims under Article 20A.18B); *Memorial Herman Hosp. System*, 2005 WL 1562417 at *6-8. The statutory causes of action are governed by state laws that enforce the prompt payment of claims by insurers to independent health care providers. *Baylor v. Arkansas*, 331 F. Supp. 2d at 511. The ERISA

---

[6] Article 3.70-3C, § 3A(e) further provides:

> (1) if the insurer determines the entire claim is payable, [the insurer must] pay the total amount of the claim in accordance with the contract between the preferred provider and the insurer;
>
> (2) if the insurer determines a portion of the claim is payable, [the insurer must] pay the portion of the claim that is not in dispute and notify the preferred provider in writing why the remaining portion of the claim will not be paid; or
>
> (3) if the insurer determines that the claim is not payable, [the insurer must] notify the preferred provider in writing why the claim will not be paid.

Plan insuring Walters provides the factual context for these claims, but the Plan is peripheral to the statutory obligation to pay Memorial Hermann promptly for services it rendered. *Id*. The Texas Insurance Code – rather than the insured's employee benefit Plan – is the basis of this claim. *Id.* at 512. Memorial Herman has a right of recovery under the Texas prompt pay statutes independent of Walters's rights as a Plan participant. The prompt-pay statutory claims are not completely preempted by ERISA. *Id*.

### C. Other Texas Insurance Code and DTPA Claims

In its proposed counterclaim and third-party claim, Memorial Hermann also asserts additional claims for deceptive trade practices in the business of insurance under Article 21.21, §§ 4, 16 of the Texas Insurance Code and under Texas Business and Commerce Code § 17.46.[7] Memorial Hermann does not specify the alleged misrepresentations, but they

---

[7] *See* Tex. Ins. Code Ann. Art. 21.21, repealed by Acts 2003, 78th Leg., ch. 1274, § 26(a)(a) (effective April 1, 2005), replaced by Tex. Ins. Code Ann. tit. 5, § 541.001 et seq. (Vernon 2004-2005). Memorial Hermann alleges the following violations of Article 21.21, § 4:

> (1) Making, issuing, circulating, or causing to be made, issued or circulated, any estimate, illustration, circular or statement misrepresenting the terms of any policy issued or to be issued on the benefits or advantages promised thereby ...;
>
> (2) Causing, directly or indirectly, to be made, published, disseminated, circulated or placed before the public, or in any other way, a statement containing any assertion, representation or statement with respect to the business of insurance which is untrue, deceptive or misleading;
>
> (11) [sic ] Misrepresenting an insurance policy by: (a) making an untrue statement of material fact; (b) failing to state a material fact that is necessary to make other statements made not misleading, considering the circumstances under which the statements were made; (c) making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of a material fact; (d) making a material misstatement of law; or (e) failing to disclose any matter required by law to be disclosed,

appear to be limited to statements made about the payment of the invoiced amounts under the managed care contract, not about whether Walters was covered under the Plan. The allegations asserting these causes of action do not refer to any assignment of benefits, do not assert a right to Plan benefits, and do not allege bad faith processing of the invoice (as opposed to misrepresentations about the processing). These causes of action could not have been brought under section 502(a) because they rely on the alleged existence of state-law statutory duties to a third-party health care provider independent of ERISA and the Plan. *Cf. Pascack Valley Local Hosp.*, 388 F.3d at 407 n.8 ("The question . . . is whether the Hospital could have brought its claim under § 502. If it could not, then removal was improper, and the Plan's arguments on the merits . . . only can be adjudicated in state, not federal, court."). These causes of action are not completely preempted. *See Davila*, 124 S. Ct. at 2496.

---

including a failure to make disclosure in accordance with another provision of this code.

Memorial Hermann alleges the following violations of the Texas Deceptive Trade Practices Act, for which relief is provided under article 21.21, § 16, of the Texas Insurance Code:

> (1) "causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services"; § 17.46(b)(2).
>
> (2) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not; § 17.46(5).
>
> (3) representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; § 17.46(b)(7).
>
> (4) representing that an agreement confers or involves rights, remedies or obligations which it does not have or involve, or which are prohibited by law; § 17.46(b)(12).

### D.     Negligence and "Intentional Acts" Claims

In the proposed counterclaim and third-party claim, Memorial Hermann alleges that the Committee and Blue Cross acted negligently or intentionally by breaching duties owed "separate and apart from the underlying breach of contract" by: (1) failing to pay all the patients' claims on a timely basis; (2) failing to investigate timely all the patients' claims; (3) continuing to delay payment of the claims beyond the contractual and statutory time limitations; (4) intentionally misleading Memorial Hospital about payment under the contract; (5) wrongfully recouping payments previously made on authorized and certified admissions by withholding payment on "'other' members" [sic] uncontested claims; and (6) failing to obtain approval or authorization on claims that were the subject of wrongful recoupments.  (Docket Entry No. 18, 10).  To determine if there is complete preemption under section 502, *Davila* requires that the court assess whether Memorial Hospital has standing to assert its negligence/intentional act claims and whether the Committee and Blue Cross owed Memorial Hermann a legal duty independent from obligations under the ERISA Plan.

Several Fifth Circuit opinions address preemption of state-law tort and other claims asserted by health care providers in cases removed from state court.  *See Transnational Hosp. Corp. v. Blue Cross & Blue Shield of Tex.*, 164 F.3d 952, 954 (5th Cir. 1999); *Cypress Fairbanks Med. Ctr. v. Pan-American Life Ins. Co.*, 110 F.3d 280, 282 (5th Cir. 1997); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 243-44 (5th Cir. 1990).  These cases appear to rely on conflict preemption analysis under section 514, rather than

complete preemption under section 502 and were decided before the Supreme Court's decision in *Davila*.[8]  Conflict preemption is a defense to a state claim and does not create subject matter jurisdiction for cases filed in federal court or removed from state court.  *See, e.g., Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999); *Copling v. Container Store, Inc.*, 174 F.3d 590, 594-95 (5th Cir. 1999), *rev'd on other grounds, Arana v. Ochsner Health Plan,* 338 F.3d 433 (5th Cir. 2003).  Because Memorial Hermann's claims are not completely preempted, this court has no subject matter jurisdiction to determine whether the negligence/intentional tort claims "relate to" ERISA and are subject to conflict preemption under § 514.  The conflict preemption issues are appropriately left for state-court resolution.

## IV.   Conclusion

This case is dismissed for lack of subject matter jurisdiction.  The motion for leave to file the counterclaim and third-party claim is dismissed as moot.

SIGNED on September 1, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

---

[8] Section 514(a) provides that ERISA "[s]hall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" described in ERISA. 29 U.S.C. § 1144(a) (emphasis added).